

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Joe G. Fender
County Attorney
Fisher County
Roby, Texas

Dear Sir:

Opinion Number O-2336
Re: Unauthorized disburse-
ment from interest and sink-
ing fund and the liability
therefor.

We are in receipt of your letter of June 14, in which you request our opinion on the following matter:

"Whereas there is a surplus of money in the courthouse sinking fund, it is the order of the court that $5,000 thereof be invested in Fisher County Road and Bridge Warrants to be due on the 15th day of May, 1941, and to bear interest at the rate of five per cent per annum from date of issue. And for said purpose the county clerk is hereby authorized and directed to forthwith issue four Road and Bridge Warrants for the amount of $1,250.00 each, payable to the Courthouse Sinking Fund of Fisher County, due May 15, 1941, and on receipt of said warrants, to be held in the Courthouse Sinking Fund, as an investment, the county treasurer is authorized to transfer said amount of money from the Courthouse Sinking Fund to the Road and Bridge Fund, to-wit, $1,250.00 to each of the four Commissioners' Precincts."

The foregoing quotation represents an order passed by the Commissioners' Court of Fisher County, Texas, on June 10, 1940. Your question being:

"Is such an investment of the surplus money in the sinking fund authorized by the Constitution and Statutes of this State?"

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Joe G. Fender, page #2


In addition to the above quoted question, you ask our opinion on the following:

"If such a transfer of funds is unauthorized, are the bondsmen of the county clerk and the county treasurer liable therefor?"

We call your attention to Article 779 of Vernon's Annotated Civil Statutes, under Title 22, Chapter 3, giving as its general heading -- Bonds, County, Municipal, Etc. This article specifically enumerates certain securities as being eligible for investment of sinking funds. It does not make eligible warrants of any kind. Chapter 8 of Title 22, under the general heading -- Sinking Funds, Investments, Etc., Article 836, Vernon's Annotated Civil Statutes, again enumerates the type of securities which shall be eligible for investment of sinking funds. And, as in the preceding mentioned article, warrants are not named. It is, therefore, our opinion that the contemplated investment, as reflected by the above quoted order of the Commissioners' Court, is unauthorized.

Without further discussion we think this disposes of your first question.

With regard to the liability for such a transfer or investment of funds, we refer you to Articles 839 and 840 of Chapter 8, Title 22, Vernon's Annotated Civil Statutes, and under the first mentioned article we find that the Legislature has expressly forbidden any city or county treasurer to honor any draft from the interest and sinking funds provided for any of the bonds of such city or county, except for the purpose of paying the interest on such bonds or redeeming the same, or for investment in such securities as may be provided by law. The succeeding article expressly provides the penalty for any treasurer who shall violate the provisions of Article 839. Article 841 reads, in part, as follows:

"* * * Whenever the reports of any treasurer show that he has diverted said funds * * * the Attorney General or the District Attorney of the district in which such treasurer resides, or county attorney in counties in which there is no district attorney provided by law, shall thereupon institute suit against such treasurer and his official bondsmen for the amount of such penalty and of said funds so diverted. * * *"

Honorable Joe G. Fender, page #3

We think this answers your question with reference to the liability of the bondsmen of the county treasurer for issuing warrants against the Road and Bridge Fund for the purpose of placing same in the Courthouse Sinking Fund.

It is not clear in law just what the liability of the county clerk would be under such circumstances. It appears that his capacity in this connection is merely ministerial, and that the issuance of warrants by him as instructed by the Commissioners' Court does not directly work a diversion of the funds in the custody of the county treasurer. However, we are inclined to the view that such officers, as knowingly participate in an action which eventually effectuates a diversion of funds, would be liable on their official bond. In the case of McDonald vs. Farmer, 56 S.W. 555, the court said:

"A county treasurer who, exercising good faith and proper care, pays an invalid county warrant, is not liable to the county therefor."

The import of this statement seems to be that the duty of determining the validity of a warrant does not rest solely upon the county treasurer, and in logical sequence the accountability and liability could be traced back through such officers as put in motion the instrument which made possible the diversion. Considering this language in connection with that used in the case of Padgett vs. Young County, 204 S.W. 1046, wherein the court stated:

"Where a county judge approves fictitious claims against the county on which the county clerk issued warrants, on which in turn the county treasurer issued checks, which after payees' signatures were forged, the county depository bank paid and the county commissioners, after the discovery of the fraud, took no steps to hold the bank accountable, the bank's payment was not the sole proximate cause of loss, and all such officers are jointly and severally liable therefor." (Underscoring ours)

we reach the conclusion that the county clerk or his bondsmen would likewise be liable for any diversion of the funds, though in the custody of the county treasurer, and since such liability

Honorable Joe G. Fender, page #4

is not as clear out as that imposed upon the county treasurer, we think the degree of liability falling upon the county clerk will be controlled by the facts in each particular case.

Trusting that the foregoing satisfactorily answers your inquiry, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By *Clarence E. Crowe*
Clarence E. Crowe
Assistant

APPROVED JUN 25, 1940

FIRST ASSISTANT
CEC-s  ATTORNEY GENERAL

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN